UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM W. TAYLOR,<br><br>　*Plaintiff*,<br><br>　　v.<br><br>PLANNING AND ZONING COMMISSION FOR THE TOWN OF WESTPORT; TOWN OF WESTPORT,<br><br>　*Defendants*. | Civil No. 3:21cv1023(JBA)<br><br><br><br>August 25, 2023 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff William Taylor brought his six-count Complaint against Defendants Westport Planning and Zoning Commission and the Town of Westport in state court, including allegations that Defendants violated his federal and state constitutional rights by their handling of his various land use applications. Defendants removed this action to federal court and now seek summary judgment [Doc. # 18].

**I.　　Factual and Procedural Background**

Plaintiff is the owner of vacant land located at 715 Post Road East, Westport, Connecticut on which he has been trying to develop an office building project. On February 3, 2015, the Planning and Zoning Director Laurene Bradley informed Plaintiff's attorney that

> [p]ursuant to Section 43-6.4 of the Zoning Regulations the P&Z Department has determined that a peer review from a traffic engineer is needed and thus we are requesting to be reimbursed for a traffic consultant peer review for the above referenced project. The attached proposal from Beta-Inc. for a peer review of your client's site plan is $4,400. Plus, I have added based upon their hourly rate for their senior traffic engineer one meeting of 3 hours for a cost of $630. Thus, a total project cost for this peer review is proposed to be $5,030. Pursuant to this regulation we request that you submit a bank check for 150% of this amount equal to $7,545.

(Defs.' Local Rule 56(a)(1) Statement of Facts [Doc. # 18-2] ¶ 2.) Plaintiff paid the fee.

1

On April 11, 2019, the Plaintiff applied to the Planning and Zoning Commission for a combined site plan and excavation fill permit to build a small office building of 4,220 square feet with 22 parking spaces. On June 13, 2019, Planning and Zoning Staff told plaintiff that they considered his application incomplete, and requested the Plaintiff grant an extension to allow himself time to complete the application before appearing at the Planning and Zoning Commission ("the Commission") hearing scheduled for June 20, 2019.

On June 19, 2019, Plaintiff submitted supplemental and revised materials. However, at the hearing, the Commission Chairman Lebowitz refused to hear from Plaintiff's counsel, Laurel Fedor, on the issue of whether the application was complete, stating "I don't want to hear this right now." (Defs.' Ex. B [Doc. # 18-4] at 3:16-17.)[1] Committee Member Chip Stephens maintained that the application was incomplete, and the Committee voted to close the issue. (*Id.* at 6:21-8:4.)

At a Commission work session on July 11, 2019, the Commission Members discussed their previous refusal to hear Plaintiff's attorney, and some Commissioners raised concerns with their treatment of Plaintiff's application, while also being sharply critical of Plaintiff's past applications, occasionally in vulgar terms. (*See id.* at 11-40.) Chairman Lebowitz referred to previous applications by the Plaintiff as a "sh*t show" and Committee Member Stephens referred to them as "Clustered. A 'CF.'" (*Id.* at 16:10-19.) However, Chairman Lebowitz stated:

> I don't like to have any applicant on any application, regardless of whether we like them, don't like them, like the application, don't like the application. Regardless of whether we've seen the applicant before on this site, I don't ever want to have that situation come up again. Never again, as long as I'm in the chair, do I want to turn to an applicant and before they say one word I say to

---

[1] Page numbers for the transcript refer to the page numbers of the docketed exhibit, not the transcript itself.

2

>them that I move to close. . . . Instead of saying closed, I should have said continued. Go away.

(*Id.* at 19:22-20:6, 20:15-18.)

On July 25, 2019, the Commission met and voted unanimously to deny Plaintiff's application without prejudice, finding his application to be incomplete. Plaintiff first appealed this denial to the Connecticut Superior Court on August 13, 2019 (Pl.'s Ex. 1 [Doc. # 22-2]) and then filed a 7-count Amended Complaint and Appeal on October 17, 2019: (Count One, C.G.S. § 8-8 Appeal; Count Two, C.G.S. § 8-1c Unjust Enrichment; Count Three, 42 U.S.C. § 1983 Equal Protection/Unjust Enrichment; Count Four 42 U.S.C. § 1983 Equal Protection; Count Five, 42 U.S.C. § 1983 Equal Protection/Unjust Enrichment; Count Six, 42 U.S.C. § 1983 Equal Protection/Inverse Condemnation; Count Seven, Connecticut Constitution, Article I, subsection 5). (Pl.'s Ex. 3 [Doc. # 22-4]).

Defendants moved to strike counts two through seven, on the grounds that Conn. Gen. Stat. § 8-8 does not authorize civil causes of action with a land use appeal. In granting Defendants' motion, the state court "emphasiz[ed] that…this court has not ruled[] that the plaintiff, in counts two through seven, ha[d] failed to state a cause of action upon which relief can be granted," only that "any such claim must be brought in a separate action apart from the claim set forth in count one of this administrative appeal." (Pl.'s Ex. 4 – Superior Court's Mem. of Decision re: Defs.' Mot. to Strike [Doc. # 22-5] at 4-5.)[2]

---

[2] Plaintiff's direct appeal of the Commission's denial proceeded and was rejected by the Superior Court, but the Connecticut Appellate Court reversed, holding that the failure of the Commission to allow Plaintiff to be heard on the issue of whether his application was complete deprived him of his right to fundamental fairness. *See Taylor v. Plan. & Zoning Comm'n of Town of Westport*, 218 Conn. App. 616, 633, *cert. denied*, 346 Conn. 1022 (2023). The Appellate Court also stated that "[b]ased on certain commission members' intemperate remarks that suggest an absence of neutrality or impartiality toward the plaintiff and his application, on remand, and upon an appropriate motion, some members of the commission should consider recusing themselves." *Id*. at 634 n. 17.

3

Thereafter, on June 22, 2021, Plaintiff brought a separate civil action in Superior Court containing six counts pertaining to the land use dispute, which was then removed by Defendants to federal court pursuant to 28 U.S.C. § 1331 due to claims arising out of federal law. Count One claims unjust enrichment based on fees charged to Plaintiff in connection with his land use application. Counts Two alleges an equal protection violation under the Fourteenth Amendment of the US Constitution and Article 1, Section 1 of the Connecticut State Constitution, based on Defendants' collection of a $7,500 traffic study fee from Plaintiff.[3] Count Three alleges an equal protection violation based on a denial of a fair hearing to Plaintiff.  Count Four alleges an equal protection violation based on Plaintiff being charged $650 by Defendants for an allegedly unnecessary Special Permit for Excavation and Fill application, and an additional $35 for record compilation of that application. Count Five alleges another equal protection violation, repeating many of the same allegations about improper fees and denial of due process as in his prior counts. Count Six pleads a violation of Article I subsection 5 of the Connecticut Constitution, alleging Plaintiff has been discriminated against in violation of his right to equal protection.

## II.    Legal Standard

On a motion for summary judgment, the burden is on the moving parties to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the

---

[3] While Counts Two through Five are labeled as claims arising under 42 U.S.C. § 1983, they also incorporate allegations that Defendants' conduct violates the Connecticut Constitution. As such, it is difficult to precisely delineate where in the Complaint Plaintiff is alleging violations of federal law, state law, or both.

nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 175 (2d Cir. 1995). Where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. *Cortes v. MTA N.Y. City Transit*, 802 F.3d 226, 230 (2d Cir. 2015). "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013).[4]

### III.    Discussion

#### A.    Abstention and Rooker-Feldman Doctrine

Defendants initially argued that abstention was warranted in light of the Plaintiff's appeal of the Superior Court's order sustaining the Commission's denial. However, Defendants concede that the subsequent reversal of that order by the Connecticut Appellate Court renders their abstention arguments inapplicable. (Defs.' Mem. in Resp. To Pl.'s Suppl. [Doc. # 28] at 1.)

Notwithstanding this reversal, Defendants seek dismissal for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, maintaining that Plaintiff's constitutional claims cannot be heard because the same claims were already advanced in state proceedings,

---

[4] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

and Plaintiff's requested relief would overturn the Connecticut Superior Court's denial of Plaintiff's zoning appeal. Under *Rooker-Feldman*, "inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgments of state courts." *Moccio v. New York State Office of Admin.*, 95 F.3d 195, 197 (2d Cir. 1996). However, because the superior court has been reversed, the *Rooker-Feldman* doctrine does not bar Plaintiff's claims.

### B. Res Judicata

Defendants argue that res judicata bars Plaintiff's constitutional claims, but since the superior court was explicit in its order granting the motion to strike that Plaintiff's § 1983 claims could be advanced in a different proceeding, just not alongside his zoning appeal, Defendants' position is unavailing. Further, the reversal by the Connecticut Appellate Court renders Defendants' res judicata argument moot, and so it does not bar Plaintiff's claims.

### C. Statute of Limitations

Defendants next argue that Plaintiff's constitutional claims are barred by the three-year statute of limitations for suits brought under § 1983, noting that the disputed $7,500 fee for the traffic study was requested and paid for in 2015, six years before suit was filed in 2021. Under federal law, a § 1983 cause of action accrues, "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Plaintiff responds that when his cause of action accrued is an issue of material fact and lists several possible accrual dates, based on different stages of the land use dispute. (Pl.'s Opp'n at 14-15.)

However, Plaintiff's § 1983 claims based on his 2015 traffic study fee clearly had expired by the time Plaintiff filed suit in 2021, and subsequent developments in his land use dispute do not extend the statute of limitations for his claim of impropriety of having to pay the 2015 fee. On the other hand, as Plaintiff applied to the Planning and Zoning Commission for a

combined site plan and excavation fill permit on April 11, 2019, Defendants have not shown that claims based on this application are time-barred. At oral argument, Defendants referenced a waiver of the Excavation and Fill permit fee in 2019 based on a prior payment, but the record fails to establish with any sufficient clarity when the fee for the Excavation and Fill Permit was actually paid, and if the fee was paid in late-2018, it would not be time-barred. Because "the statute of limitations as a bar to suit is an affirmative defense for which the party asserting it bears the burden of proof," *United States v. Livecchi*, No. 03-CV-6451P, 2005 WL 2420350, at *9 (W.D.N.Y. Sept. 30, 2005), and the summary judgment record does not clearly show whether the fee was paid more than three years prior to Plaintiff's suit being brought, Plaintiff's claims arising from his payment of the Excavation and Fill permit fee will not be dismissed as time-barred. It is undisputed that Plaintiff's claims that he was denied a fair hearing in 2019 are not time-barred.

### D. Equal Protection Claims

Plaintiff brings equal protection claims of discriminatory treatment under § 1983, based on allegations he was improperly required to pay fees, and that he was denied a fair hearing. While prototypical equal protection claims are based on membership in a protected class, often vulnerable to discrimination, the Supreme Court formally recognized a "class of one" equal protection claim in *Vill. of Willowbrook v. Olech*. 528 U.S. 562, 564 (2000). *Olech* held that "where the plaintiff did not allege membership in a class or group," he may nonetheless seek equal protection if he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. However, as the Second Circuit said in *Harlen Assocs. v. Inc. Vill. of Mineola,* "we are mindful of the general proscription that federal courts should not become zoning boards of appeal to review non-constitutional land-use determinations by the Circuit's many local legislative and administrative agencies." 273 F.3d 494, 502 (2d Cir. 2001). "A federal court's function is

7

to protect individuals and groups against intentional discriminatory and disparate treatment, not to oversee the operations of local governments and agencies." *Pappas v. Town of Enfield*, 18 F. Supp. 3d 164, 178 (D. Conn. 2014).

In order to prevail on a "class of one" equal protection claim, plaintiffs must show "an extremely high degree of similarity between themselves and the persons to which they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). The Second Circuit explained that:

> the existence of persons in similar circumstances who received more favorable treatment than the plaintiff in a class-of-one case is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain. Accordingly, to succeed on a class of one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Id.* Although circumstances requiring a fact-intensive inquiry may be appropriate for jury determination, "a court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation, […], where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." *Id.* at 159.

The Court requested that the parties address at oral argument the selective treatment alternative for equal protection claims in the zoning context other than as a "class of one," recognized in *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). Under a selective treatment theory, plaintiffs must show that "(1) the [plaintiffs], compared with others similarly situated, [were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . malicious or bad faith intent to injure a person." *Id.* "Impermissible considerations" include "discrimination on the basis of a defendant's

8

personal malice or ill will towards a plaintiff." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019).

"Unlike an *Olech* [class of one] claim, a malice-based *LeClair* claim requires proof of a defendant's subjective ill will towards a plaintiff." *See Servidio Landscaping, LLC v. City of Stamford*, No. 3:19-CV-01473 (KAD), 2020 WL 7246441, at *3 (D. Conn. Dec. 9, 2020). "While *Olech* requires an 'extremely high' degree of similarity between a plaintiff and comparator, *LeClair* merely requires a 'reasonably close resemblance' between a plaintiff's and comparator's circumstances." *Hu*, 927 F.3d at 93. Under the "reasonably close resemblance" standard of similarity, "[a] plaintiff can prevail by showing that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id*. at 96. But "[t]o prevail under either theory of Equal Protection, a plaintiff must specify at least one instance in which he was treated differently from another similarly situated." *Id.*

Here, a jury could reasonably find evidence of malice on the part of Defendants. The Connecticut Appellate Court's opinion makes that abundantly clear. *See Taylor v. Plan. & Zoning Comm'n of Town of Westport*, 218 Conn. App. 616, 634 n. 17. Thus, the "reasonably close resemblance" standard under the "selective treatment theory" applies.

Plaintiff argues he was "treated differently' than Geiger's Garden Center, Walgreens, and "all other applicants."[5] (Pl.'s Opp'n at 16-18.) At oral argument, Plaintiff also pointed to other

---

[5] Plaintiff argues he was treated differently "than all other applicants who file applications." (Pl.'s Opp'n at 18.) Plaintiff posits that when he "filed his applications with the Planning and Zoning Dept., in order for them to be accepted, they had to be complete per office policy . . . However, the defendant says the application was incomplete at the time of the public hearing. The defendant refused to hear any testimony or evidence on the topic of the site plan application, even though the plaintiff provided everything on the application list when materials were submitted to the planning and zoning department and including his fee." (*Id*.) But as Defendants' note, Plaintiff fails to offer particular comparators on this point. (Defs.' Reply at 4-5.)

buildings located close to the site of his project. Defendants maintain that none of the other projects identified are similarly situated to Plaintiff's project. (Defs.' Reply [Doc. # 23] at 2-5.)[6] The relevant discussion as it pertains to Plaintiff's claims appears to be the Geiger's project, as Plaintiff argues that the Geiger's project was issued a site plan permit without the requirement of an additional excavation and fill permit. (*Id.* at 17.)[7]

Plaintiff argues that the "Geiger project obtained the same variances that the plaintiff did" (*Id.* at 17, citing Pl.'s Ex. 8 [Doc. # 22-9]), "without having to obtain and pay an additional $650.00 for an Excavation and fill permit or even file an application." (*Id.*, citing Pl.'s Exs. 7 [Doc. # 22-8] and 17 [Doc. # 22-18]). Defendants argue Geiger is not similarly situated based on

> plaintiff's own submissions [that] Geiger's 1135 Post Road East is a 2.07 acre lot which contained an existing building. Geiger's proposed constructing a new 2-story, 4,344 square foot building containing a Bank with Drive-In (1st floor) and Office use (2nd floor); constructing a new 2-story, 3,746 SF Retail building and constructing 4, residential buildings consisting of a total of 12 residential dwelling units, with a combination of 1 and 2 bedroom units including townhouses and flats and 67 parking spaces.

(Defs.' Reply at 3, citing Pl.'s Ex. 7.) Defendants contrast Geiger's project with Plaintiff's 0.358 acre corner lot, which was an unimproved vacant lot for which Plaintiff proposed a small office building consisting of 4,220 square feet, with 22 parking spaces. (*Id.*) Plaintiff has failed to show how the Geiger project could be found to reasonably closely resemble Plaintiff's project, other than the fact that both projects were subject to municipal zoning procedures. The undisputed portion of the record reflects substantially different projects, meaning

---

[6] Defendants dispute the similarity of Plaintiff's claims comparing his treatment with a local Walgreens with regard to trees he wanted to plant (Pl.'s Opp'n at 17-18), even though no allegations regarding trees appear in the Complaint, (Defs.' Reply at 3-4.)
[7] There is no need to engage in equal protection analysis in regard to the traffic study dispute, as those allegations are time-barred.

Plaintiff lacks a factual basis to establish an equal protection claim either as a "class of one" or under "selective treatment theory." Summary judgment is granted as to Plaintiff's equal protection claims.

### E. State Law Claims

Because summary judgment has been granted as to all of Plaintiff's federal claims, the Court declines to entertain Plaintiff's state law claims for unjust enrichment and violations of the Connecticut Constitution. Pursuant to 28 U.S.C. § 1367, a district court may decline supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

> It is well-established that supplemental jurisdiction
>
> > is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

When all federal claims have been dismissed, a federal court "must reassess its jurisdiction over the case by considering several factors—judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d. Cir. 2004). "If [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Id.* at 56. Here, summary judgment on Plaintiff's federal claims has been granted and no facts counsel for the exercise of supplemental jurisdiction over Plaintiff's remaining state law

11

claims. Thus, Plaintiff's claims alleging unjust enrichment and violations of the Connecticut Constitution will be remanded to state court.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED with respect to all claims alleging violations of the United States Constitution. Supplemental jurisdiction over Plaintiff's state law claims alleging unjust enrichment and violations of the Connecticut Constitution is declined, and such state law claims are remanded to the Connecticut Superior Court for the Judicial District of Stamford/Norwalk at Stamford.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 25th day of August 2023.